UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LATONYA JOHNSON,

     Plaintiff,

     v.                                 Case No. 08-C-0472

ERIC K. SHINSEKI[1]
 Secretary of the United States Department
 of Veterans Affairs,

     Defendant.

---

**DECISION AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## NATURE OF THE CASE

The plaintiff, Latonya Johnson, filed this action on May 28, 2008, alleging that the defendant had discriminated against her based on her age and race and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 20002 et seq., as amended (Title VII) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §623(a)(1). In her complaint, the plaintiff asserts that she made an initial contact with the Office of Resolution Management (ORM) on November 1, 2006, alleging that the United States Department of Veterans Affairs "had discriminated against her on the basis of age, race, and prior Equal Employment Opportunity activities." (Complaint at 3). The plaintiff filed her formal Complaint of Employment Discrimination on December 28, 2006. Id.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case

---

[1] The Honorable Eric K. Shinseki replaced R. James Nicholson as the Secretary of the United States Department of Veterans Affairs on January 21, 2009. Accordingly, Mr. Shinseki has been substituted for Mr. Nicholson as the defendant in this action.

was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

The defendant has filed a motion for summary judgment. The motion is fully briefed and will be addressed herein.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant.

In determining whether a genuine issue of material fact exists, the court must consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587 (1986); Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992). However, when the nonmovant

Case 2:08-cv-00472-PJG   Filed 03/22/10   Page 2 of 19   Document 32

is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. Anderson, 477 U.S. at 256; see also Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial."). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

## Undisputed Relevant Facts[2]

The plaintiff is an African American female with a date of birth of March 17, 1964. She is employed as a full-time nursing assistant in the Rehabilitation, Extended and Community Care (RECC) Division of the Zablocki Veterans Administration Medical Center (ZVAMC). She has worked in the RECC Division since January of 2001. The RECC Division deals with a mostly male, geriatric population. The plaintiff's first assignment in the RECC Division at the ZVAMC was in the nursing home care unit. The plaintiff's supervisors in the Nursing Home Care Unit were Jody Johnson and Vicki Perry-Brahm.

The plaintiff has received regular pay and step increases since beginning employment at the ZVAMC. Specifically, she began employment at the ZVAMC on January 2, 2001, as a GS-4, Step 1 with a total salary of $20,596. On January 14, 2001, she received a pay

---

[2]  As a general matter, unless accompanied by citation, the relevant facts are taken from the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

adjustment to $21,364.  On May 20, 2001, she was promoted from GS-4 to GS-5 with a total salary of $23,902.  On January 13, 2002, she received a pay adjustment to $25,022 and on May 19, 2002, she received a within-grade increase to Step 2 with a total salary of $25,856.  On January 12, 2003, the plaintiff received a pay adjustment and locality payment increase, making her total salary $26,936, and on May 18, 2003, she received a within-grade increase to Step 3 with a total salary of $27,804.

On January 11, 2004, a correction to her salary brought it to $28,927.  On May 16, 2004, the plaintiff received a within-grade increase to Step 4 with a total salary of $29,832.  On January 9, 2005, she received a pay adjustment to $30,843 and on January 8, 2006, she received a pay adjustment to $31,800.  On May 14, 2006, the plaintiff received a within-grade increase to Step 5 with a total salary of $32,764 and on January 7, 2007, she received a pay adjustment to $33,552.

In August 2004, the plaintiff contacted an Equal Employment Opportunity (EEO) counselor, alleging that she was subjected to harassment (hostile work environment).  Her allegations were that she had been repeatedly touched in a sexual manner by one of the adult residents of the Nursing Home Care Unit, and that nothing was done about it until the same resident did a similar thing to a white employee.  At the time of this EEO complaint, her supervisors were Vicki Perry and Jody Johnson.

The  EEO complaint was resolved when the parties entered a Settlement Agreement dated October 28, 2004.  The Settlement Agreement required the plaintiff to withdraw her complaint and required the agency to transfer the plaintiff from the Nursing Home Care Unit to the Adult Day Health Care Unit (Adult Day Care) of the RECC Division.  This agreement, by its terms, was kept confidential and was not accessible to Jody Hersh or David Van Thiel.

The plaintiff's transfer to the Adult Day Care Unit became effective November 1, 2004. Adult Day Care is in a separate and different building (Building 70) than the plaintiff's previous assignment in the Nursing Home Care Unit.

At the time of the plaintiff's transfer to Adult Day Care, her direct supervisor was David Van Thiel, a Caucasian male who was born in October, 1952. He was the plaintiff's immediate supervisor from November 1, 2004, through June 2006. In June of 2006, Jody Hersh, a Caucasian woman with a birth date in October of 1956, became Acting Program Manager of Adult Day Care, replacing Mr. Van Thiel, who was made Acting Director of the RECC Division. At that time, Ms. Hersh became the immediate supervisor of the plaintiff, Jayla Traylor and Aisha Warren. Mr. Van Thiel became Ms. Hersh's supervisor. Ms. Hersh is, and was at all times relevant to the complaint, a registered nurse (R.N.). Ms. Hersh knew that all of the nursing assistants in her unit were African American.

Ms. Traylor is an African American female with a date of birth of December 17, 1983. Ms. Warren is an African American female with a date of birth of April 22, 1977. Ms. Traylor and Ms. Warren are, and were at all times relevant to the complaint, employed full time at the ZVAMC as nursing assistants. Ms. Warren and Ms. Traylor were the only other nursing assistants in Adult Day Care where the plaintiff worked at all times relevant to the complaint. Both Ms. Traylor and Ms. Warren are comparators for purposes of this lawsuit. On September 14, 2006, Ms. Hersh issued a written Letter of Counseling to Ms. Warren.

The plaintiff did not respect Ms. Warren because she would not back her up when the plaintiff complained to Ms. Hersh about Ms. Traylor. She also described Ms. Warren as "just as lazy as Jayla [Traylor]." (Declaration of Michael T. Newman [Newman Decl.], Exh. A, ¶ 12, Attachment 22 at 20-21). The plaintiff did not consider Ms. Warren trustworthy. The

plaintiff said about Ms. Traylor and Ms. Warren, "they are not my age or my equal." (Newman Decl., Exh. A, ¶ 12, Attachment 22 at 22).

During the fall of 2006, on at least two occasions, the plaintiff was observed sewing a skirt and on another occasion was seen reading a book while on duty in Adult Day Care. The plaintiff admitted sewing the skirt while on duty. She also admitted reading on the job in October or November of 2006. Ms. Hersh observed the plaintiff sewing and reading on the job. When Ms. Hersh talked to the plaintiff about reading and writing during work time, the plaintiff responded: "I'm reading this medical book for school and the things I'm writing in this notebook are what staff are doing and not doing during work time." (Newman Decl., Exh. A, ¶ 9, Attachment 19 at 25).

Ms. Hersh used a "report of contact" form to memorialize these issues for her own personal records. A report of contact form, while used for contacts with patients, is also used throughout the ZVAMC to memorialize situations with employees. They do not go into the employee's employment file and are kept strictly in the supervisor's office. Ms. Hersh wrote reports of conduct regarding the plaintiff on October 31, 2006, November 1, 2006, and November 8, 2006.

A staff/patient Halloween party was held at the ZVAMC in 2006. Ms. Hersh received a report about the plaintiff's dancing at the party. The plaintiff described the dancing she did at the Halloween party as "tap dancing, doing the Chicago bop, whatever. But it's more like Fred Astair [sic] moves." (Newman Decl., Exh. A, ¶ 12, Attachment 22 at 26).

The plaintiff received a warning about sewing on the job on November 9, 2006. On that day, the plaintiff received a "Written Counseling/Referral to Employee Assistance Program" from Ms. Hersh. The purpose of a letter of counseling is to memorialize an

- 6 -

employee's conduct and communicate expectations. The plaintiff was counseled on her need to demonstrate improvement in her behavior on the job. In the written counseling, Ms. Hersh stated: "I am concerned that you may have a personal health problem that is affecting your behavior on the job. For that reason, I wish to make you aware of the availability of the Employee Assistance Program (EAP) services at this Medical Center." (Declaration of Jody Hersh [Hersh Decl.], Exh. B, ¶ 14, Attachment 5 at 1). Ms. Hersh stated that participating in the EAP was voluntary. Ms. Hersh concluded the written counseling by stating, "[u]nless you demonstrate immediate, consistent, and significant improvement in your behavior, I will be forced to pursue other appropriate corrective action, including possible disciplinary action. However, if you have a medical condition that is affecting your conduct on the job, you may submit medical documentation that will be reviewed and considered." (Hersh Decl., Exh. B, ¶ 14, Attachment 5 at 2).

Prior to the letter of counseling, the plaintiff told her second line supervisor, Mr. Van Thiel, that she "never wanted to go in the office with that lady [Jody Hersh] again, because she never resolved anything." (Newman Decl., Exh. A, ¶ 12, Attachment 22 at 31). The plaintiff said that Ms. Hersh never responded to the plaintiff's complaints.

The plaintiff further stated, "[t]he day before I got the written counseling, I had called Mr. Van Thiel over to the area crying, hysterical, telling him everything I had told Jody, and she never responded to the patient safety issues, and she was turning on me, harassing me, stressing me out. I was crying and screaming in front of this man [Van Thiel]. . . . I said, Please don't let me have to go in the office with her again. . . . I said, I can't deal with her anymore. Please don't let me go into the office with her." (Newman Decl., Exh. A, ¶ 12, Attachment 22 at 31).

- 7 -

When asked about being referred to the EAP by Ms. Hersh in the letter of counseling, the plaintiff stated that the EAP existed "[t]o help me resolve any anger issues or whatever. I didn't appreciate her offering it to me, if that's what you're asking. I didn't need counseling. I had a counselor assigned to me through the County, because my son tried to kill himself under their supervision." (Newman Decl., Exh. A, ¶ 12, Attachment 22 at 32).

When asked why she believed she was discriminated against on the basis of reprisal with regard to the letter of counseling, the plaintiff stated, "I made it very clear to [Jody Hersh] that I was going over her head. She told me to my face, nobody in administration wanted to hear it . . . and it wasn't leaving that area because Dave Van Thiel said that I was a problem and a complainer in the past. What is she doing knowing about what went on in the past . . . that I was the reason for the problem in that past?" (Newman Decl., Exh. A, ¶ 8, Attachment 18 at 31).

Performance appraisals were done for employees at the ZVAMC. In 2006, employee performance appraisals were divided into "critical elements." Nursing assistants were rated for each critical element by "level of achievement," namely "less than fully successful," "fully successful" and "exceptional." One of the critical elements is for "Direct Patient Care." Another critical element of the appraisal is "Patient Support." It includes as sub-part B:

> Relationships with supervisors, co-workers, and others are consistently courteous and comparative in nature. Consistently handles differences of opinion in a business-like fashion. Contributes to the effective operation of the area. Consistently uses languages appropriate to the situation. Consistently presents and maintains a consistent and non-judgmental attitude. Accepts diversity of all cultures, ages and gender.

(Newman Decl. Exh. A, ¶ 21, Attachment 23 at 7).

A third critical element is entitled "Organizational Goals and Objectives Standard." It includes as part of its description:

- 8 -

Employee promotes effective working relationships with supervisors, co-workers, top management personnel, and all others. Functions as a team member helping the group effort where possible. Regularly participates in team meetings as indicated. Demonstrates commitment and support of the goals of the work unit, the Division, the Medical Center, the VISN, and the Department of Veterans Affairs by actively participating in problem solving work groups developed to reach the organizational goals and objectives. Offers performance improvement suggestions as appropriate.

(Newman Decl. Exh. A, ¶ 21, Attachment 23 at 7).

On November 20, 2006, the plaintiff received a performance appraisal from Ms. Hersh, covering the period January 18, 2006, to September 30, 2006. She was rated as "exceptional" in Direct Patient Care and "fully successful" in all other areas. (Newman Decl., Exh. A, ¶ 21, Attachment 23 at 4-5). Her overall rating was "fully successful." Id. The year 2006 was the first time the performance appraisal used the rating system of "unsuccessful," "fully successful" and "exceptional" to appraise performance under the four critical elements. Prior to 2006, employees were rated on a "successful/unacceptable" appraisal system, referred to by Ms. Hersh as "met or unmet." The plaintiff received "successful" ratings under this system prior to 2006.

Ms. Warren and Ms. Traylor also received performance appraisals for the time period January 18, 2006, to September 30, 2006. While both Ms. Warren and Ms. Traylor received overall ratings of "fully successful" for all critical elements, neither received any "exceptional" ratings.

## ANALYSIS

### Title VII and ADEA Claims

At the outset, the court notes that in her response brief, the plaintiff makes arguments related to several facts that fall outside the time frame delineated by the complaint. More specifically, she mentions (1) the fact that she was transferred to Escort Service on March

14, 2007; (2) a disciplinary action issued to her by Mr. Van Theil and Ms. Hersh on April 10, 2007; and (3) the fact that she was ultimately transferred to Palliative Care on April 30, 2007. There is no evidence in the record, however, that the plaintiff has filed an EEO complaint related to these actions. Because such a complaint is a prerequisite to federal claims brought under both the ADEA and Title VII, the court will not consider any claims or arguments related to these actions. See 29 U.S.C. § 626(d); 42 U.S.C. §§ 2000e-5(b), (e), and (f); Casteel v. Executive Bd. of Local 703 of Int'l Bhd. of Teamsters, 272 F.3d 463, 466 (7th Cir. 2001); Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992); see also, Rodgers v. Lincoln Towing Serv., Inc., 771 F.2d 194, 198 (7th Cir. 1985) (holding that "allegations that lie outside the complaint" are "irrelevant to [the court's] analysis").

In moving for summary judgment, the defendant maintains that the plaintiff cannot establish a prima facie case of either race or age discrimination because she cannot prove that she suffered an adverse employment action, and because she cannot identify a similarly situated employee of a different race or age who was treated more favorably. The defendant also argues that even if the plaintiff has established a prima facie case of either race or age discrimination, he has offered a non-pretextual, nondiscriminatory reason for any actions taken against the plaintiff, namely, that she was not meeting the defendant's legitimate expectations and the actions taken were therefore warranted.

In response, the plaintiff asserts that Ms. Hersh took two adverse employment actions against her, including: (1) giving her a "bogus" written counseling; and (2) giving her a poor performance appraisal. (Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment [Plaintiff's Brief] at 14). The plaintiff claims that these actions were discriminatory because other similarly situated employees were not subject to similar actions.

Title VII of the Civil Rights Act of 1964 (Title VII) states in relevant part that employers are not allowed "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Similarly, the Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Claims brought under either Title VII or the ADEA are analyzed under the same framework, meaning that a plaintiff may proceed on both race and age discrimination claims using either the direct or the indirect burden-shifting method of proof. Nagle v. Village of Calumet Park, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009) (citing Cerutti v. BASF Corp., 349 F.3d 1055, 1061 n.4 [7th Cir. 2003]).

When proceeding under the direct method, a plaintiff can survive summary judgment "by creating triable issues as to whether discrimination motivated the adverse employment action of which he complains." Nagle, 554 F.3d at 1114 (citing Lewis v. Sch. Dist. #70, 523 F.3d 730, 741 [7th Cir. 2008]). In establishing discriminatory intent under the direct method, a plaintiff may rely on either direct or circumstantial evidence. Nagle, 554 F.3d at 1114 (citing Lewis, 523 F.3d at 741). "'Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" Nagle, 554 F.3d at 1114 (quoting Rudin v. Lincoln Land Cmty. College, 420 F.3d 712, 720 [7th Cir. 2005]). Direct evidence usually requires "an admission from the decisionmaker about his discriminatory animus," which, understandably, is rare. Nagle, 554 F.3d at 1114. However, a plaintiff also can "establish an inference of discrimination under the direct method by relying on circumstantial evidence." Id. This includes evidence which

- 11 -

"suggests discrimination albeit through a longer chain of inferences." Luks v. Baxter Healthcare Corp., 467 F.3d 1049, 1052 (7th Cir. 2006) (citing Sylvester v. SOS Children's Villages Ill., Inc., 453 F.3d 900, 902-03 [7th Cir. 2006]). Such circumstantial evidence often consists of:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group;
>
> (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and
>
> (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

Nagle, 554 F.3d at 1114-15 (quoting Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491 [7th Cir. 2007]) (other citation omitted).

Under the indirect method initially set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff must first establish a prima facie case by showing that: (1) she "'belongs to a protected class'"; (2) her "'performance met [her] employer's legitimate expectations'"; (3) she "'suffered an adverse employment action'"; and (4) "'similarly situated others not in [her] protected class received more favorable treatment.'" Williams v. Waste Mgmt. of Ill., 361 F.3d 1021, 1034 (7th Cir. 2004) (quoting Brummett v. Lee Enters., Inc., 284 F.3d 742, 745 [7th Cir. 2002]).

"If the plaintiff establishes a prima facie case of age, race, or national origin discrimination, the employer, to avoid liability, must then produce a legitimate, nondiscriminatory reason for the adverse employment [action]." Cerutti, 349 F.3d at 1061 (citing Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 [7th Cir. 2002]); see also, Burlew v. Eaton Corp., 869 F.2d 1063, 1067 n.7 (7th Cir. 1989) (noting the Supreme Court's prior

holding that "after the plaintiff establishes a prima facie case, the burden of production, not persuasion, shifts to the defendant – i.e., the defendant must articulate a non-discriminatory reason for its action"). If the defendant produces a legitimate, nondiscriminatory reason, "the plaintiff must then 'rebut that explanation by presenting evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual [i.e., a lie].'" Cerutti, 349 F.3d at 1061 (quoting Peele, 288 F.3d at 326) (alteration in original).

There is no dispute that the plaintiff is a member of a protected class. However, another necessary element of both the direct and indirect methods of proof is evidence that the employee suffered an adverse employment action. In Nagle, the court described what typically constitutes an actionable adverse employment action. The court explained that:

> [F]or purposes of Title VII, there are three general categories of actionable, materially adverse employment actions: (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

Nagle, 554 F.3d at 1116 (quoting Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 780 [7th Cir. 2007]).

The court of appeals for this circuit also has explained that "[t]he definition of an adverse employment action is generous, but it is still subject to certain limitations. At the very least, [a plaintiff] must show some quantitative or qualitative change in the terms or conditions of his employment that is more than a mere subjective preference." Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) (citing Herrnreiter v. Chicago

- 13 -

Housing Auth., 315 F.3d 742, 744-45 [7th Cir. 2002]) (other internal citations omitted).  In other words, to prove that an action was adverse, a plaintiff must show that the action was accompanied by some tangible, negative consequence, such as termination, demotion, or ineligibility for promotions, favorable transfers, or advantageous increases in responsibilities. Atanus v. Perry, 520 F.3d 662, 675 (7th Cir. 2008); Oest v. Ill. Dep't of Corr., 240 F.3d 605, 613 (7th Cir. 2001) (citing Thomsen v. Romeis, 198 F.3d 1022, 1028 [7th Cir. 2000]); Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998) ("Absent some tangible job consequence accompanying [allegedly unfair] reprimands, we decline to broaden the definition of adverse employment action to include them.").  Additionally, and in accordance with the requirement of a tangible negative consequence, a negative performance evaluation, standing alone, "do[es] not constitute an actionable adverse employment action." Smart v. Ball State Univ., 89 F.3d 437, 442 (7th Cir. 1996); see also Lucas v. Chicago Transit Auth., 367 F.3d 714, 731 (7th Cir. 2004) (citing Sweeney, 149 F.3d at 556-57; Smart, 89 F.3d at 442) ("Our past decisions indicate that a negative evaluation or admonishment by an employer does not rise to the level of an adverse employment act.").

The plaintiff puts forth two actions that she alleges qualify as adverse employment actions: (1) the written letter of counseling issued to the plaintiff on November 9, 2006, and (2) the "fully successful" performance appraisal she received on November 20, 2006.  The plaintiff argues that these actions qualify as adverse because they "had the potential effect of limiting [the plaintiff's] ability to promote within the [Veterans Administration], which, of course, substantially limited her compensation rate."  (Plaintiff's Brief at 14).

A written counseling would qualify as an adverse employment action if it diminished the plaintiff's compensation, fringe benefits or other financial terms of her employment.  See

- 14 -

Nagle, 554 F.3d at 1116. However, in this case, the plaintiff has presented no evidence to show that her receipt of a written counseling negatively affected her opportunities for promotion or her compensation and benefits. Rather, the undisputed facts establish that the plaintiff actually received a pay increase, from $32,764 to $33,552, only two months after receiving the written counseling. This increase, and the fact that it was consistent with the plaintiff's previous yearly increases, directly contradicts the plaintiff's assertion that the written counseling "substantially limited her compensation rate." (Plaintiff's Brief at 14).

Absent any evidence that the written counseling actually negatively impacted her compensation rate, limited her promotional opportunities, or altered her job duties, the plaintiff has not shown that the written counseling constituted an adverse employment action. See Atanus, 520 F.3d at 675 (a "letter of instruction" did not qualify as an adverse action where employee did not suffer disciplinary action, termination, demotion, or change in job responsibilities as a result); Sweeney, 149 F.3d at 557 (counseling statements, which admonished the plaintiff to improve, but stopped short of disciplining her, were not adverse employment actions).

The plaintiff contends that the second adverse employment action was her receipt of the "fully successful" performance appraisal on November 20, 2006. She characterizes this appraisal as a "poor performance appraisal."[3] (Plaintiff's Brief at 14). As with the written counseling, the plaintiff has not presented any evidence to support her claim that this performance appraisal negatively impacted her promotional opportunities, her compensation rate, or her job responsibilities. Nor has the plaintiff shown that the performance appraisal

---

[3]    The court recognizes that it is questionable whether the performance appraisal at issue even qualifies as negative, given that it rated the plaintiff as "fully successful" in all categories but one, and rated her as "exceptional" in that remaining category.

resulted in "some quantitative or qualitative change in the terms or conditions of [her] employment." Johnson, 325 F.3d at 901. Rather, the undisputed facts show that the performance appraisal was not accompanied by any negative consequences. In fact, in January 2007, two months after her November 2006 performance appraisal, the plaintiff's salary was raised from $32,764 to $33,552. Thus, since the plaintiff has not shown any change in the terms and conditions of employment resulting from the appraisal, her 2006 performance appraisal did not constitute an adverse employment action.

Because neither the written counseling nor the "fully successful" performance appraisal rise to the level of materially adverse employment actions, the plaintiff has not established a prima facie case of race or age discrimination under either the direct or indirect method of proof. Accordingly, the defendant's motion for summary judgment will be granted on the plaintiff's Title VII and ADEA discrimination claims.

**The Plaintiff's Retaliation Claim**

With regard to the plaintiff's retaliation claim, the defendant again contends that the plaintiff has failed to establish an adverse employment action and, therefore, cannot prove her retaliation claim under either the direct or indirect methods. He further maintains that if the court finds that the plaintiff suffered an adverse action, he has proffered a non-pretextual, nondiscriminatory reason for such action, i.e., that the plaintiff was not meeting the defendant's legitimate work expectations. And finally, the defendant asserts that Ms. Hersh lacked any knowledge of the plaintiff's prior EEO activity and, therefore, could not have retaliated against her for such activity.

In response, the plaintiff asserts that she has provided sufficient proof that she suffered an adverse employment action. She also contends that Ms. Hersh did, in fact, have

knowledge of her prior EEO activity, and that the allegedly adverse actions she suffered at the hands of Ms. Hersh were a direct result of that knowledge.

In addition to prohibiting discrimination based on race, Title VII also prohibits employers from retaliating against an employee because he or she "has opposed any practice made an unlawful employment practice by [Title VII], or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

As with race and age discrimination, a plaintiff may prove unlawful retaliation has occurred using either the direct or the indirect, burden-shifting method of proof. Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). To satisfy her burden under the direct method, a plaintiff must show that: "(1) [she] engaged in statutorily protected activity; (2) [she] suffered a materially adverse action by [her] employer; and (3) a causal connection exists between the two." Id. (citing Argyropoulos v. City of Alton, 539 F.3d 724, 733 [7th Cir. 2008]). In attempting to prove the required causal connection, a plaintiff "is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion," but may also present "circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." Luks, 467 F.3d at 1052 (citing Sylvester, 453 F.3d at 902-03).

When proceeding under the indirect method, a plaintiff must establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action by her employer; (3) "[she] was performing [her] job satisfactorily"; and (4) she nevertheless "was treated less favorably than a similarly situated employee who did not complain of discrimination." Stephens, 569 F.3d at 786-87. If a plaintiff satisfies each element of her prima facie case, "the burden shifts to the defendant to

provide a nondiscriminatory reason for the employment action." <u>Volovsek v. Wis. Dep't of Agric., Trade, and Consumer Protection</u>, 344 F.3d 680, 692 (7th Cir. 2003).  If the employer offers evidence of such a legitimate, nondiscriminatory reason, the plaintiff must counter with evidence that this reason is pretextual.  <u>Id.</u>  If a plaintiff fails to provide sufficient evidence of any of the four elements of her <u>prima</u> <u>facie</u> case, or of pretext if such proof is required, the defendant is entitled to summary judgment.  <u>Hilt-Dyson v. City of Chicago</u>, 282 F.3d 456, 465 (7th Cir. 2002).

To support a claim of unlawful retaliation under either the direct or indirect method of proof, the plaintiff must show that she was subjected to an adverse employment action. Neither the written counseling the plaintiff received, nor her 2006 performance appraisal resulted in any quantitative or qualitative change in her compensation or terms and conditions of her employment.  Thus, the plaintiff has not shown that she suffered a materially adverse employment action.  <u>See</u> <u>Johnson</u>, 325 F.3d at 901.  Because the plaintiff has not established a necessary element of her retaliation claim, the defendant is entitled to summary judgment on this claim.

In sum, based on the undisputed facts, the plaintiff has failed to establish that she suffered an adverse employment action, which is a necessary element of her race and age discrimination and retaliation claims.  Accordingly, the defendant's motion for summary judgment will be granted as to all of the plaintiff's claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Clerk of Court substitute Eric K. Shinseki for R. James Nicholson as the defendant in this action.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment be and hereby is **granted**.  (Docket # 21).

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2010.

BY THE COURT:

s/ Patricia J. Gorence

PATRICIA J. GORENCE
United States Magistrate Judge